clerk, will you call the next case, please? Mr. Karmody, please. Of course, counsel. My name is Dr. Karmody from the State Health Offender's Office here on behalf of Ali Lamont Evans. Your honors, my remarks will be quite brief this morning as I think the brief sets out the issues in this case. The DVDs are the real record in this case with this issue. The recordings clearly show the defendant invoking his right to remain silent and his right to counsel. To quote, he said, I don't want no more questions, man. I want my lawyer. I ain't saying shit else. The police ignored the invocation and kept talking to the defendant, asking questions and telling them he had been identified in a lineup. And most importantly, that the defendant's proffered alibi witnesses had not panned out. Clearly and without any doubt, the police officers made these revelations to the defendant with the clear intent of eliciting an incriminating statement. One of the detectives told the defendant, we just paint the picture. In commenting on this statement, the trial court stated, I don't want to call it problematic, but there is a question mark in my mind. Respectfully, the trial court should have listened to that question in its mind and suppressed the defendant's your honors. I have no question. Okay, I guess not. Mr Kennedy. Thank you, Mr Hanson. Good morning, Your Honors. May I please the court counsel? The case is a bit more factually intense than counsel really went into. The point here is under Edwards versus Arizona. The defendant initiated further conversation with the police after the police honored his request for an attorney. They then just told him how the case was proceeding. There was no more interrogation. Indeed, I start out in my brief and I'm going to do so here and there's a good deal of redundancy here, but I think the facts are quite important. Look at the facts that out in the defendant's own motion to suppress. The lineup was held after the defendant exercises Miranda rights. The cops told the defendant he'd been identified as at the scene and his alibi witnesses didn't appear to support him. That elicited zero response from the defendant. The police then just got booking information from the defendant, which the authority in my case says is completely proper. Now things begin to get interesting. Then the defendant says, Why? Why am I being charged? The cops said, Hey, you request an attorney. We can't talk to you. Uh, they said they can't give you details. Then he says, I didn't do this, man. The cop again said, Please can't talk to you. Third time, he says, Fuck all that, man. Let me tell you how it was. The cop again says, This is from the defendant's own motion to suppress. By the way, cop again told him to stop, said he sought a lawyer. The defendant then number four time. You can call this three times before, depending on how the last two fruit statements are counted, whether it's two or one. He says this time, Fuck that lawyer, man. The defendant then re-Miranda eyes, and then he gives the statement that implicates himself. That is a fair version of the facts, your honor. It's the defendant's version set up his motion, and it's a tourist version. In a bit more detail, you look at the facts that came out at the hearing on the motion to suppress. The defendant was Miranda eyes. He spoke to the police. Then he said he won an lineup. They'd earlier told him even before that that he was going to be in a lineup, so that was pretty redundant information to him. The cops asked him to pick his lineup number. Common practice. He did. Then there was the lineup. The police did not speak with him outside the interrogation room. After the lineup, the cops returned to him, told him he was charged with murder. They contacted the alibi witnesses, and he'd been identified in the lineup. Then there was routine booking information, name, address, height, weight, sort of stuff, which the outlaw case, which I cite, any case I say here is in my brief, says it was not interrogation. Then the defendant, here we're starting into the reinitiating conversation, he asked why he was charged. The police said he won an attorney, can't talk to him. The cops got a little bit more booking information from him. Then he said, I didn't do this. The cops said, can't talk to you. Now, the third time, and in this case, the fourth isn't actually brought in. He says, F that, I'll tell you what happened. The detective said, hold on. The police had to be sure he knew his rights. Two detectives and Mirandize, the defendant. They gave him time to think about it. Detective left the room to get a supervisor. The detective returned and got a written Miranda waiver. The detective sergeant, that was apparently the supervisor, his name's in the record and it's on the DVDs, asked him if he wished to waive his rights. Defendant said yes. The defendant then said he was the lookout. Turning to the DVDs themselves, says, I know you will. They're to him. DVD number one shows the defendant eating a meal the police gave him. It shows how nice, really, the cops were to him, relatively speaking. Look, they're cops and he's a defendant, but this was no rubber truncheon beating a confession out of some squirming defendant. They told him he was placed at the scene. He was Mirandized. He talked to the police. The police said he'd be in a lineup. This is the first DVD. Police told him, witness saw him come out of the store without a gun. That witness said he didn't have the gun. Defendant said his alibi would check out. Then he asked for a lawyer, questioning the seats. Turning to the second DVD. He's proclaiming his innocence. The police said, have to re-Mirandize and get their supervisor to be sure he knew his rights. He keeps proclaiming his innocence. The supervisor comes in. The defendant said he earlier wanted a lawyer, but now he wished to testify. These are my notes taken from looking at those DVDs. You're gonna look at them. I think you'll agree with me if he says that. He's re-Mirandized. He initialed a Miranda form. Then he said he wanted to talk. Then he signed a Miranda waiver. The supervisor asked if he voluntarily and knowingly wished to talk. The defendant said he did. That is the evidence. The judge was really thorough in his findings. He said the defendant was brought in, immediately told he'd be in a lineup. He said his alibi would check out. He said he wanted a lawyer. Police repeated he'd be in a lineup. He again said he wanted a lawyer. Everything ended. There was a break of about 40 minutes. The police came in to get him for the lineup, get height and weight information, that sort of thing. Then they took him to the lineup. Questioning properly had ceased, the judge below found. The police returned from the lineup to the room with the defendant, told him he'd been identified and what his girlfriend or his girlfriend's mother said, his supposed alibi witnesses. And the cop said, all we do is paint the picture, which counsel referred to, which the judge said was not any kind of interrogation. The judge had all these facts before him. He saw the entire context. He could make that determination. The cops told him he'd been charged with murder. And again, asked him for some personal information, biographical stuff. Here we get into the reinitiation of the conversation again. The defendant said, why are you charging me? The defendant reminded that the defendant, the detective reminded him he'd said he wanted an alibi. The police then resumed getting personal information. Defendant said, I didn't do it. The cop said, we're not gonna talk to you. Third time, the defendant then said, according to the judge, this is a judge finding. F that lawyer. Judge found these were three. As I point out, you can argue it's either three or four. Clear initiations, Edwards versus Arizona, and a reinitiation of conversation by counsel. Detective McDaniel left to get a supervisor. They returned. Detectives do a fine job of remorandizing. The judge found the tapes will back him up. That supervisor, Sergeant Body, I was searching for his name. Here it is, was very clearly and calmly asking him if he understood his rights and reinforced them. These are the judge's findings. The judge found a reinitiation. Your Honor, I cite a I distinguish in my brief the Oliveira case where the police, the defendant asked what happened. The police answer that questioning, answer that question rather than remorandizing him. Here there was no such questioning by the police. He previously been told he'd been identified by the at the scene and that his alibi witnesses did not support him. So the defendant's statement here, unlike that in Oliveira, elicited nothing incrimination, elicited nothing improper from the police. I point up about the defendant in, again, this is in my brief. I agree my argument's quite redundant in that regard. He did, the defendant did much more here than the defendant in Miller, who reinitiated conversation by asking why his car was being towed, rendering his later statements admissible. Miller found the defendant's question there was the impetus for discussing the case where the officer properly responded to it by remorandizing, which happened here. He was remorandized ad nauseum. Miller noted the Bradshaw U.S. Supreme Court case, holding that well, what's going to happen to me was a reinitiation of conversation. And Woolley said there was a reinitiation by the defendant saying I didn't do it. Again, I'll be terse as my opponent has been, although obviously I've been a lot wordier than he, but it's in the brief. Again, any harm, but first of all, we also made the point, any error was harmless. The eyewitness, Ms. Sherman, identified the defendant as at the scene. This was no stranger. She knew the defendant from some prior scuffle of some sort. She was not identifying a stranger. She picked out his photo from, I think it was 835 photographs. Also, the next day, the defendant gave an even more incriminating statement the day after the issue. And in the defendant's initial brief here, nothing was said about that statement. And below, there was no motion made to suppress that later statement. So there was no argument made until the reply brief, which is, I'd argue, too late being critical of that latter day statement. I apologize for the redundancy, Your Honors, but this is a real fact intensive case, and there are a lot of facts helping us. And you start out with a nice outline from the dependents on the motion to suppress. Then you go to the evidence of the hearing, and those two DVDs back it up. And the judge's detailed findings, so you have actually four places to look, and each gets a bit more detail than the next, are points for re-initiation and proper. Thank you. Well, thank you, Mr. Hanson. And Mr. Kramer, do you have rebuttal time? Five minutes? I'll try to respond to the counsel's arguments as best I can. Basically, what the police officers did here was ignore his invocation of his right to counsel, and then they wore him down with information to make him want to tell them his side of the story. The police officers, in this case, could have won an Academy Award for their performance with their alleged concern over violating the defendant's rights. His rights had already been violated. Statements to when the police officers left the interview room, told him they'd be back for a lineup, and then they said, and then we'll go from there. It evinces a direct desire or plan on the police officer's part to continue the interrogation. Right after they come out of the lineup, come in and ask him, do you need to go to the bathroom before we continue? Well, what are we I would point out once again that the court did say that the paint the picture statement by the police officer put a question mark in his mouth. The identification of the defendant as perpetrator was from a witness who had had a prior altercation with the defendant. Therefore, this brings in the possibility that she had a bias against the defendant. As for the second confession, there was no attenuation hearings because of the ruling on the first confession. The state has presented no facts to indicate that as statement made the next day, if it was tainted. Under case law, you have 14 days where it's not a prevail on the attenuation hearing. If there's no questions, your honor. Thank you very much. Thank you, Mr. Comrie. Thank you both for your argument today. We'll take this matter under advisement and get back to you with a written disposition within a short time.